30 A.3d 935

**In re ADOPTION/Guardianship OF CHADEN M.**

**No. 56, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 25, 2011.

Ann M. Sheridan, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for petitioner.

Nenutzka C. Villamar, Asst. Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD; David Craig Wright, Chief Counsel of Child Advocacy Project Eastern Shore, Inc., Chestertown, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, *MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

In this case we address the obligation of an attorney, appointed to represent an allegedly disabled parent, to preserve that parent's right to object to a petition for guardianship of the parent's child, in the event that the juvenile court ultimately determines that the parent is not disabled. This matter arose out of a guardianship proceeding instituted in the Circuit Court for Baltimore City ("juvenile court"). The juvenile court granted guardianship of then-three-year-old Chaden M. to the Baltimore City Department of Social Services ("DSS") on May 7, 2009. Chaden M.'s Mother, April C., was deemed to have consented to the guardianship because neither she nor her appointed attorney filed a timely notice of objection on her behalf.

April C. noted a timely appeal to the Court of Special Appeals, which held that April C. had a right to effective assistance of counsel and that April C. was denied that right when her attorney failed to file a timely notice of objection. *In re Adoption/Guardianship of Chaden M.*, 189 Md.App. 411,

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

438, 984 A.2d 420, 435 (2009). DSS petitioned this Court, and we granted certiorari to consider whether "a non-disabled parent has a statutory right to effective assistance of counsel in a TPR [ (termination of parental rights) ] case that arises prior to the assertion of that right through the filing of an objection and request for counsel[.]"

■ For the reasons that follow, we hold that, once counsel for April C. had entered her appearance, at the request of DSS and after DSS had alleged that April C. may have been disabled, April C. thereafter had a right to effective assistance of counsel as an allegedly disabled parent in a guardianship proceeding. We hold further that counsel rendered ineffective assistance because, after entering her appearance on behalf of April C., counsel failed to preserve April C.'s right to challenge the guardianship proceedings by failing to file a timely notice of objection. Finally, we conclude that, on remand, April C. is entitled to file a belated notice of objection.

## I.

Chaden M., whose biological parents are Ms. April C. and Mr. Saint M., was placed in foster care with DSS on January 3, 2007, for reasons the record does not disclose. On February 28, 2007, Chaden M. was adjudicated a Child In Need of Assistance ("CINA")[1] and committed to DSS.

On December 1, 2008, DSS filed a petition in the juvenile court seeking guardianship of Chaden M. with the right to consent to adoption, or long term care short of adoption.

---

1. A "Child in Need of Assistance" is a "child who requires court intervention because: (1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) The child's parents, guardian, or custodian, are unable or unwilling to give proper care and attention to the child and the child's needs." Md.Code (1974, 2006 Repl.Vol.), § 3–801(f) of the Courts & Judicial Proceedings Article ("C.J.").

For ease of reference, this and all other citations herein refer to the current volumes of the statutes and rules. There have been no amendments since this matter was pending in the juvenile court that would alter our analysis.

Maryland Rule 9–103, through subsections (b)(1)(K) and (c), requires that a petition for guardianship include "[f]acts known to each petitioner that may indicate that a party has a disability that makes the party incapable of consenting or participating effectively in the proceedings." DSS alleged that April C. may have had a disability that made her "incapable of consenting to [DSS's] Petition for Guardianship or of participating in the proceeding for Guardianship" and "[t]he nature and extent of the alleged disability is mental health issues." DSS contemporaneously filed a request for the juvenile court to appoint an attorney for April C. and listed Cheryl Jeanine Smith, a public defender and April C.'s attorney in the prior CINA proceeding, under "[a]ttorney information."

Also on December 1, 2008, the juvenile court issued a show cause order to April C. that generally followed the form prescribed by Maryland Rule 9–105.[2] The show cause order included, *inter alia*, admonishments that a notice of objection must be filed within thirty days after service of the order and if April C. "d[id] not make sure that the court receive[d] [her] notice of objection on or before the deadline ... [she] ha[d] agreed to a termination of [her] parental rights." The show cause order explained that April C. had the right to consult an attorney and an attorney may have already been appointed for her based on representations made in the petition. The show cause order also warned that, "[i]f an attorney has not already contacted you, you may be entitled to have the Court appoint an attorney for you if[,] ... [b]ecause of the disability, you are incapable of consenting to the adoption or guardianship or of participating effectively in the proceeding."

---

**2.** Maryland Rule 9–105(e) has required, since 2007, that a show cause order *substantially* comply with the form provided therein. The record does not reflect that April C. ever challenged the sufficiency of the show cause order. However, we recognize that the order with which she was served did not include the following admonishment: "HOWEVER, EVEN IF YOU HAVE OR WANT TO HAVE AN ATTORNEY, YOU MUST STILL FILE THE NOTICE OF OBJECTION ON OR BEFORE THE DEADLINE STATED IN PARAGRAPH 2 OF THIS ORDER."

On December 2, 2008, DSS sent by facsimile to the Office of the Public Defender a request for appointment of counsel for April C. The next day, December 3, 2008, April C. was personally served with the show cause order and petition, which began the thirty-day period within which she could object to the petition and preserve her right to contest the guardianship proceedings.[3] Md. Rule 9–107(b). That same day (December 3), Attorney Smith entered her appearance in the guardianship proceeding.

On December 25, 2008, April C. was arrested and incarcerated for reasons not clear in the record.[4] The docket entries reflect that, on January 22, 2009, notice of a Disability Determination Hearing to be held on February 20, 2009, was sent by mail to April C. and Attorney Smith.

The deadline for filing notice of objection to the petition was January 2, 2009. Neither April C. nor Attorney Smith on April C.'s behalf had filed a notice of objection by that date.

On February 5, 2009, several weeks after April C. was deemed to have consented to the petition for failing to file an objection, Attorney Smith met with April C. at the Baltimore City Women's Detention Center. From the record, it seems that this was the first time that Attorney Smith met with April C. regarding the guardianship proceeding. At that meeting,

---

3. Maryland Rule 9–107, "Objection," provides:

> (a) **In general.** Any person having a right to participate in a proceeding for adoption or guardianship may file a notice of objection to the adoption or guardianship. The notice may include a statement of the reasons for the objection and a request for the appointment of an attorney.
>
> (b) **Time for filing objection.** (1) In general. Except as provided by subsections (b)(2) and (b)(3) of this Rule, any notice of objection to an adoption or guardianship shall be filed within 30 days after the show cause order is served.
>
>             *      *      *
>
> Sections (b)(2) and (b)(3) provide the time period when service is effected outside of Maryland.

4. The nature of the charges is not known. In a later filing, Attorney Smith simply advised that the criminal charges for which April C. was arrested were not processed and that the consequent violation of probation was subsequently dismissed, as well.

Attorney Smith "discerned that [April C.] did have some disability": and thereafter did not challenge DSS's allegation.

The petition for guardianship came on for a hearing on February 20, 2009.[5] At that time, DSS informed the juvenile court, by oral motion, that it no longer alleged that April C. was disabled. Attorney Smith was present at that hearing, although April C. was not.[6] The disability hearing was rescheduled for March 3, 2009.

On March 3, 2009, well after the last date for objection, Attorney Smith filed a notice of objection. DSS moved to strike the late-filed notice of objection, and Attorney Smith opposed that motion. Also on March 3, the disability determination hearing was again postponed to April 6, 2009, for reasons not reflected in the record. Then, on April 6, the hearing was postponed, for the last time, to May 7, 2009, because April C. was not present.

The juvenile court held the postponed disability hearing on May 7, 2009. April C. did not appear at that hearing. The Docket entries do not indicate whether she was served and given notice of the scheduled hearing. Attorney Smith informed the court that April C. was "aware of today's hearing, [but] is not present" and, "in light of the fact that witnesses were subpoenaed to be here, I still feel that I should go forward." The juvenile court received evidence on the question of April C.'s disability, heard from counsel, and determined that April C. was not disabled. The juvenile court then considered DSS's motion to strike April C.'s untimely objection. At that point the following exchange took place:

---

**5.** Attorney Smith, at the disability determination hearing held on May 7, 2009, referred to the February 20, 2009, hearing as a "Pretrial Conference." The docket entries indicate that both a pretrial conference and a disability determination hearing were scheduled for that date.

**6.** Notice of the disability determination hearing had been sent by mail to April C., but the order from that hearing reflects that April C. had not been served with notice. April C. was incarcerated on that date. She was released on February 26, 2009.

[Attorney Smith]: ... [DSS] in its petition had alleged disability and asked specifically that our office appoint an attorney. And at that point there was an acquiesced [sic] that she needed counsel and that consequently by the policy of this Court, I was appointed. So therefore I did not, because I acquiesced because I met with [April C.] shortly thereafter once I learned that she was incarcerated, I was able to fit in and meet with her and discerned that she did have some disability. I didn't know all of the details, but I could discern as a layperson that there was an issue. So therefore I went, and as is the policy here, I went on the fact that once my appearance is entered, it serves in effect as my client's objection to the termination of her parental rights. And that I've been assigned for the purpose to assist her in being able to litigate the case. Now, I can see the frown of course.

[The Court]: It's not a frown, I'm perplexed. Because I'm not aware of any such policy.

[Attorney Smith]: Well, I'm aware of how I get assigned to cases and how these cases come to me.... I am notified that there is a request for an appointment of an attorney, and that's made by [DSS] based on its own petition that they, based on information—

[The Court]: That's not the part I'm perplexed about. I'm perplexed about the Court policy that your entry of appearance serves as an objection, a statutory objection.[7]

[Attorney Smith]: I'm saying that, my argument is that factual[ly] that is how it is done here in this courthouse. *And I certainly can accept responsibility for the fact that perhaps what I should have done, and what I would proba-*

---

7. The transcript of the May 7, 2009, hearing unfortunately contains a noteworthy error. The transcript fails to indicate at the end of this important exchange precisely where the juvenile court's comments ended and where Attorney Smith's statements of admission began. Nevertheless, it is clear from the context of the statements and the procession of the conversation that the juvenile court expressed its confusion to Attorney Smith, she responded with her admission, and the juvenile court then inquired further about the statutory requirement to file a notice of objection.

*bly do from now on when [DSS] makes an allegation of disability, and then in anticipation that perhaps they may withdraw it at some later point, that I will from now on file an objection on behalf of the client.*

(emphasis added).

DSS responded that April C. was personally served on December 3, 2008; she had thirty days from that date within which to object; and, having failed to do so, she was deemed by law to have consented to the termination of her parental rights. The time requirement is enforceable, claimed DSS, despite the fact that DSS's allegation that April C. might have been disabled due to mental illness was pending during the thirty-day objection period.

The juvenile court agreed with DSS, explaining: "It's clear that no timely objection was filed in this case. That statute's clear, the parent needs to object within 30 days of service. . . . [April C.'s] counsel was advised of the filing of the petition and frankly the law is what it is." The court then granted DSS's Motion to Strike. That same day, the juvenile court appointed DSS as guardian of Chaden M., on the ground that both parents had consented.[8] The guardianship order automatically terminated April C.'s parental rights to Chaden M. *See* Maryland Code (1999, 2006 Repl.Vol.), § 5–325(a) of the Family Law Article ("F.L.") (entitled "Effects of order for guardianship," and providing in relevant part that "[a]n order for guardianship of an individual . . . terminates a parent's duties, obligations, and rights toward the individual").

## II.

On May 11, 2009, April C. noted her appeal to the Court of Special Appeals. She challenged the juvenile court's order

---

**8.** Saint M., Chaden M.'s father, conditionally consented to the guardianship so long as Chaden M. is adopted by Evelyn M., April C.'s older sister.

April C. was deemed to have consented pursuant to F.L. § 5–320(a)(1)(iii)(C), which provides for a parent's consent "by failure to file a timely notice of objection after being served with a show cause order in accordance with this subtitle[.]"

appointing DSS as guardian of Chaden M., which, as noted, had the effect of terminating April C.'s parental rights.[9] The Court of Special Appeals held that April C. had a statutory right to counsel rooted in F.L. § 5–307 and Maryland Code (2001, 2008 Repl. Vol, 2010 Supp.), § 16–204 of the Criminal Procedure Article ("C.P."), 189 Md.App. at 428, 984 A.2d at 430, and, "where there is a right to assistance of counsel in a termination of parental rights case, that right includes the right to effective assistance of counsel," 189 Md.App. at 411, 984 A.2d at 424. The Court of Special Appeals applied the standard articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), for ascertaining ineffective assistance of counsel under the Sixth Amendment. *See* 189 Md.App. at 433–38, 984 A.2d at 433–36. The Court of Special Appeals held that Attorney Smith's failure to file April C.'s notice of objection within the time prescribed was deficient under *Strickland* because it precluded any challenge to the petition for guardianship of her child. *Id.* at 437, 984 A.2d at 435. The Court of Special Appeals further held that the record was sufficient to determine that April C. met the *Strickland* standard of prejudice because, absent Attorney Smith's error, the matter would have proceeded on a contested basis and DSS would have had to prove its case by clear and convincing evidence. *Id.*, 984 A.2d at 436. The Court of Special Appeals remanded the matter to the juvenile court to permit April C. to file a belated objection. *Id.* at 438, 984 A.2d at 436.

## III.

Before this Court, Petitioner DSS requests that we reverse the judgment of the Court of Special Appeals and allow the

9. April C.'s notice of appeal indicated that she sought to challenge the juvenile court's disability determination as well as the guardianship order. However, she did not brief the disability issue in the Court of Special Appeals and addressed only whether she had received ineffective assistance of counsel. The Court of Special Appeals noted that she had abandoned her challenge to the disability determination. *In re Adoption/Guardianship Chaden M.*, 189 Md.App. 411, 421 n. 6, 984 A.2d 420, 426 n. 6 (2009).

guardianship order from the juvenile court to stand. DSS argues that the right to counsel in guardianship proceedings, pursuant to C.P. § 16–204, does not attach until the parent triggers that right by filing a timely notice of objection. DSS further argues that a notice of objection is not a pleading; rather, the notice is simplistic so as to enable a parent to complete the form without the assistance of counsel, and the statutory scheme contemplates that a *pro se* party will file the notice and the request for an attorney simultaneously. DSS also asserts that no attorney-client relationship formed between April C. and Attorney Smith before the thirty-day period lapsed because they did not meet regarding this case during that period. DSS suggests that the holding of the Court of Special Appeals effectively requires all CINA attorneys to file notices of objection to petitions for guardianship, even when parents may be absent entirely. Finally, DSS argues that April C. was not prejudiced by Attorney Smith's failure to file the notice of objection because the record does not reflect that April C. relied on counsel to file the notice of objection or that she took any affirmative steps to direct her CINA counsel to file the Notice. DSS finally asserts that a belated objection is inappropriate because there has been no showing that April C.'s due process rights were violated or that her inaction was the product of duress or misrepresentation of material fact.

Respondent April C. asserts that her right to counsel in the guardianship proceeding arose from DSS's allegation of disability, not from Attorney Smith's previous role as her counsel in the CINA matter. She further asserts that, because DSS alleged that she was disabled, and her attorney agreed with that allegation, she was entitled to an attorney under F.L. § 5–307(a) and Maryland Rule 9–105(b). April C. alternatively argues that, if her right to counsel was deemed to have arisen from Attorney Smith's representation in the CINA matter, as DSS understands the Court of Special Appeals's decision, then Attorney Smith was authorized to act on April C.'s behalf pursuant to Maryland Lawyers' Rules of Profes-

sional Conduct Rule ("MRPC") 1.2.[10] Such representation, April C. argues, extends to a guardianship proceeding because, although a separate case, it is essentially a continuation of the preceding CINA case. Finally, April C. asserts that the record from the juvenile court sufficiently demonstrates that she received ineffective assistance of counsel because the failure of Attorney Smith to file the notice of objection extinguished April C.'s right to a hearing before the juvenile court granted guardianship of her child to DSS.

Respondent Chaden M. asserts that his mother April C. had a statutory right to counsel, and that, under the *Strickland* test, she was denied that right. Chaden M., too, requests that we remand the matter to the juvenile court.

## IV.

### *Right to Effective Assistance of Counsel*

The right to counsel may be afforded by statute or rule.[11] *See, e.g. State v. Flansburg*, 345 Md. 694, 698–99, 694 A.2d 462, 465–65 (1997) (recognizing a right to counsel for petitioners in postconviction proceedings "under Maryland statutory provisions, rules and caselaw"). We have held that implicit in the grant of the right to counsel is the right to effective assistance of counsel. *See, e.g., id.* at 703, 694 A.2d at

---

**10.** MRPC Rule 1.2, "Scope of Representation and Allocation of Authority Between Client and Lawyer," provides:

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

∗      ∗      ∗

**11.** Of course, the Sixth Amendment to the United States Constitution affords a criminal defendant the right to counsel. *See, e.g., State v. Walker*, 417 Md. 589, 597, 11 A.3d 811, 816 (2011).

467. Based on DSS's allegation of the potential that April C. may be mentally disabled (and until it was decided that she was not so disabled), April C. had a right to counsel as an allegedly disabled parent in a guardianship proceeding pursuant to F.L. § 5–307(a) and Maryland Rule 9–105(b). Implicit in that right to counsel is that counsel be effective.

Adjudication of petitions for guardianship is governed by Part III of the Family Law Article, §§ 5–313 through 5–328. The general provisions of Part I of the Family Law Article apply as well, specifically §§ 5–301 through 5–310. Section 5–307 provides in pertinent part:

(a) Parent.—(1) Unless the public defender is required under § 16–204[ [12]] of the Criminal Procedure Article to provide representation, in a case under Part II or Part III of this subtitle, a juvenile court shall appoint an attorney to represent a parent who:

(i) has a disability that makes the parent incapable of effectively participating in the case; or

(ii) when a petition for guardianship or adoption is filed, is a minor. (2) To determine whether a disability makes a parent incapable of effectively participating in a case, a juvenile court, on its own motion or motion of a party, may order examination of the parent.

Additionally, Maryland Rule 9–105(b) provides:

**Appointment of attorney for disabled party.** (1) If the parties agree that a party who is not represented has a disability that makes the party incapable of consenting or participating effectively in the proceeding, the court shall appoint an attorney who shall represent the disabled party throughout the proceeding.

---

**12.** C.P. § 16–204 establishes an indigent individual's right to representation by the Office of the Public Defender in the proceedings specified therein, including, *inter alia,* "a family law proceeding under Title 5, Subtitle 3, Part II or Part III of the Family Law Article, including: 1. for a parent, a hearing in connection with guardianship or adoption." Such representation extends to "all stages of [the] proceeding." C.P. § 16–204(b)(2). The right to and the extent of the obligation of appointed counsel is not at issue in the matter *sub judice.*

(2) If there is a dispute as to whether a party who is not represented has a disability that makes the party incapable of consenting or participating effectively in the proceeding, the court shall:

(A) hold a hearing promptly to resolve the dispute;

(B) appoint an attorney to represent the alleged disabled party at that hearing;

(C) provide notice of that hearing to all parties; and

(D) if the court finds at the hearing that the party has such a disability, appoint an attorney who shall represent the disabled party throughout the proceeding.

When we interpret a statute we aim to effectuate the intent of the legislature, beginning with the plain language of the statute, or, as the case may be, the rule. *In re Mark M.*, 365 Md. 687, 711, 782 A.2d 332, 346 (2001). "Where the statutory language is clear and unambiguous and 'expresses a definite and simple meaning, courts normally do not look beyond the words of the statute itself to determine legislative intent.'" *Id.* 782 A.2d 332, 346 (quoting *Bd. Of License Comm'rs v. Toye*, 354 Md. 116, 122, 729 A.2d 407, 410 (1999)).

The plain language of F.L. § 5–307(a) specifically provides for representation of a disabled parent in guardianship proceedings, unless that parent is already entitled to representation under C.P. § 16–204. Maryland Rule 9–105(b) protects a disabled parent's right to an attorney by requiring the court to appoint an attorney for purposes of a disability determination hearing if there is a dispute as to whether the parent is disabled and throughout the proceeding if the parties agree that the parent is disabled. The plain language of Rule 9–105(b) confers a right to an attorney where there is an allegation that a parent may be disabled.

As DSS alleged in the petition that April C. may have had a mental health disability that would have made her incapable of participating in the proceedings, April C. had a right to counsel under Rule 9–105(b), at least until the juvenile court determined that she was not disabled. Evidently for this reason, DSS, contemporaneously to the filing of the petition,

requested that an attorney be appointed for April C. and listed Attorney Smith as her attorney. And, significantly, Attorney Smith entered her general appearance in the matter on December 3, 2008, just two days after DSS filed the petition. April C., having a right to counsel and having been provided counsel who entered her appearance in the case, was entitled to effective assistance of counsel. *Flansburg*, 345 Md. at 703, 694 A.2d at 467 (holding that, assuming *arguendo* that petitioner in postconviction relief proceeding had no constitutional right to counsel for filing motion to modify sentence after probation revocation hearing, petitioner had a statutory right to counsel and a consequent right to effective assistance of counsel); *Wilson v. State*, 284 Md. 664, 671, 399 A.2d 256, 260 (1979) (stating that "[e]ntitlement to assistance of counsel would be hollow indeed unless the assistance were required to be effective" and holding that defendant has a right to effective assistance of counsel on direct of appeal, pursuant to the public defender statute).

## *Effectiveness of Counsel*

Section 5–318(b) of the Family Law Article provides that, "[b]efore a juvenile court grants guardianship [on a nonconsensual basis], the juvenile court shall hold a trial on the merits of the petition," but, where all parties consent, "a juvenile court *may* hold a hearing before entering a guardianship order," § 5–318(a) (emphasis added). A parent who fails to file a timely notice of objection is deemed to have consented by operation of law. F.L. § 5–320(a)(1)(iii)(C). That failure forecloses the parent's ability to contest the petition. *See In re Adoption/Guardianship No. 93321055*, 344 Md. 458, 488, 494, 687 A.2d 681, 695–96, 698 (1997) ("[T]he statutory scheme of regarding the failure to file a timely objection as an irrevocable deemed consent to the petition does not facially offend any due process right of the parent.") The juvenile court may then proceed to grant a petition for guardianship on a consensual basis and without a hearing. F.L. § 5–318(a); *see also* F.L. § 5–320(a)(1).

For two reasons, the determination of whether a parent is disabled is of utmost importance. First, a finding of disability under the statute means that "the parent [is] incapable of effectively participating in a case." F.L. § 5–307(a)(1)(i). Second, if the juvenile court determines that a parent is disabled, then the parent has a right to counsel throughout the proceedings, even if that parent is not indigent and entitled to an appointed attorney under C.P. § 16–204. F.L. § 5–307(a).

When a parent is alleged to be disabled, there is the possibility that the juvenile court ultimately will find that the parent, in fact, is not disabled. *See* F.L. § 5–307(a)(2) ("To determine whether a disability makes a parent incapable of effectively participating in a case, a juvenile court, on its own motion or motion of a party, may order examination of the parent."); Md. Rule 9–105(b)(2) ("If there is a dispute as to whether a party who is not represented has a disability that makes the party incapable of consenting or participating effectively in the proceeding, the court shall: (A) hold a hearing promptly to resolve the dispute."). A parent, alleged to be disabled, who does not file a timely notice of objection, and who the juvenile court subsequently determines is not disabled, will be deemed to have consented to, and thereby will have lost the right to contest, the guardianship petition, thereby resulting in the termination of her parental rights. F.L. § 5–320(a)(1)(iii)(C). The deemed consent that arises from the failure to object timely, therefore, eliminates the requirement that DSS prove, as it would in a contested case, by "clear and convincing evidence that terminating the rights of a parent is in a child's best interests." F.L. § 5–323(b).

It is clear from the record in this case that Attorney Smith did not render April C. effective assistance. At the hearing on DSS's motion to strike, held on May 7, 2009, Attorney Smith argued that she understood that DSS had alleged that April C. suffered a disability and that she, Attorney Smith, had been appointed as counsel (leading to her entry of appearance on April C.'s behalf). Attorney Smith further indicated that, after meeting with April C. while she was incarcerated, she, Smith, agreed "as a layperson that there was an issue"

concerning April C.'s disability, and Smith concluded that, "as is the policy here, I went on the fact that once my appearance is entered, it serves in effect as my client's objection to the termination of her parental rights. And that I've been assigned for the purpose to assist her in being able to litigate the case." There was no proof of the existence or general recognition of such a "policy." Even had there been, it would not have been sufficient to trump the application of the statutes and rules pertinent to this case.

Attorney Smith's underlying error rests in the fact that she presumed, without basis, that DSS agreed (as would the juvenile court) that April C. was disabled. Based on that assumption, Smith operated as if the matter would proceed automatically as a contested case. She evidently ignored the alternative possibilities: either that DSS would withdraw its allegation or that the juvenile court would determine that April C. was not disabled. In either of those two alternative scenarios, April C. would have needed to object timely for the matter to proceed as a contested case, in order to avoid having been "deemed" to consent to the guardianship petition and the resulting termination of her parental rights.

Attorney Smith recognized her error as April C.'s counsel in not filing a notice of objection. After the juvenile court indicated that it was "perplexed about the Court policy that your entry of appearance serves as an objection, a statutory objection," Attorney Smith acknowledged "the fact that perhaps what I should have done, and what I would probably do from now on when the Department makes an allegation of disability, . . . [is] file an objection on behalf of the client." [13]

Attorney Smith's error, as we have said, precluded April C. from contesting the guardianship petition, which, under F.L. § 5–325, led inevitably to the termination of her parental rights in Chaden M. Moreover, the record reflects, through

---

13. Because Attorney Smith entered her appearance in this case on December 3, 2008, she became April C.'s attorney at that time. It therefore is unnecessary for us to address DSS's arguments concerning when the right to counsel is triggered, under C.P. § 16–204.

the words and actions of Attorney Smith, April C.'s desire to contest the petition: Attorney Smith filed the notice of objection on behalf of April C. when it became clear that the matter would not necessarily proceed as a contested trial based on April C.'s then-disputed disability.

Given the prejudice inuring to April C. as the result of Attorney Smith's error, we hold that April C. received ineffective assistance of counsel and, consequently, was denied the right to counsel granted to her under F.L. § 5–307(a) and Rule 9–105(b). Under these circumstances, permission to file a belated notice of objection is the proper remedy. *See Garrison v. State*, 350 Md. 128, 142–43, 711 A.2d 170, 177 (1998) (recognizing that the "cases make clear[ ] [that] ... when, through no fault of his own, an accused's desired appeal is not timely filed on his behalf, a belated appeal may be a proper remedy"); *Webster v. State*, 299 Md. 581, 604, 474 A.2d 1305, 1317 (1984) (recognizing right to counsel under state Public Defender Act at pre-indictment lineup and that, when delinquent public defender adversely affects fairness of trial, "it is incumbent upon the judiciary to assure that the defendant is not thereby prejudiced").

We therefore affirm, albeit by a different analysis, the judgment of the Court of Special Appeals.[14]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

MURPHY, J., joins in the judgment only.

---

**14.** We base our holding on the clear and admitted failure of Attorney Smith, once she had entered her appearance in the matter, to have fulfilled a statutory duty to file a notice of objection on behalf of her client. Therefore, there is no need to address, as the Court of Special Appeals did, 189 Md.App. at 431–38, 984 A.2d at 432–36, the applicability to this situation of the analysis of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).