*Steven Berg v. Susan Berg*, No. 0624, September Term, 2015

**HEADNOTES:**

**MARYLAND CONSTITUTIONAL LAW**

Article IV, section 22 of the Maryland Constitution provides, *inter alia,* that "[w]hen any trial is conducted by less than three circuit judges . . ." litigants have a right to an *in banc* appeal "upon the decision or determination of any point or questsions by the court . . . ." The word "trial" as used in section 22 means: "that step in an action by which issues or questions of fact are decided."

**MARYLAND CONSTITUTIONAL LAW**

To have a right to an *in banc* appeal under Article IV, section 22, the party filing the appeal need not show that the decision or determination was made at a "merits trial;" it is sufficient if a final decision or determination was made by less than three circuit court judges at a hearing at which issues or questions of fact were decided.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0624

SEPTEMBER TERM, 2015

_____

STEVEN BERG

v.

SUSAN BERG

_____

Eyler, Deborah S.,
Woodward,
Salmon, James P.
     (Retired, Specially Assigned),

JJ.

_____

Opinion by Salmon, J.

_____

Filed: June 2, 2016

The Maryland Constitution, which was ratified in 1867, included a provision that granted most litigants in Maryland[1] a right to an in banc appeal. That right was set forth in Article IV, section 22 of the Maryland Constitution.

Article IV, section 22 was amended in 1978 and in 2006. Nevertheless, much of the original language endures. Presently, section 22 reads:

> <u>Where any trial is conducted by less than three Circuit Judges</u>, upon the decision or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved for the consideration of three Judges of the Circuit, who shall constitute a court in banc for such purpose; and the motion for such reservation shall be entered of record, during the sitting at which such decision may be made; and the procedure for appeals to the Circuit Court in banc shall be as provided by the Maryland Rules. The decision of the said Court in banc shall be the effective decision in the premises, and conclusive, as against the party at whose motion said points, or questions were reserved; but such decision in banc shall not preclude the right of Appeal by an adverse party who did not seek in banc review, in those cases, civil or criminal, in which appeal to the Court of Special Appeals may be allowed by Law. The right of having questions reserved shall not, however, apply to trials of Appeals from judgments of the District Court, nor to criminal cases below the grade of felony, except when the punishment is confinement in the Penitentiary; and this Section shall be subject to such provisions as may hereafter be made by Law.

(Emphasis added.)

In this appeal, appellant, Steven Berg, makes an argument that has never been addressed by any Maryland appellate court during the (approximately) 150 years that Article IV, section 22 has been in effect. Mr. Berg maintains that the right to an in banc appeal

_____

[1] Before the Baltimore City courts were reorganized and the Supreme Bench abolished in 1980, Article IV, § 22 did not apply to cases filed in Baltimore City. *See* Dan Friedman, *The Maryland State Constitution* 248 (G. Alan Tarr ed., 2011). *See also* *Washabaugh v. Washabaugh*, 285 Md. 393, 403 (1979).

"spring[s] only from trial verdicts and judgments," and not from any other final judgment. Mr. Berg asserts that the issue considered by the three judges in this case was one that the panel had no jurisdiction to decide because the issue addressed by the panel did "not stem from a merits trial" but rather stemmed from the consideration by the in banc panel of an issue that arose long after the merits trial had been held. According to appellant, the word "trial," as used in section 22, has a very narrow meaning.

For the reasons set forth below, we conclude that the in banc panel did have jurisdiction in this case and we therefore affirm the order issued by that panel.

## I.

This case had its origin in 2005, when Steven Berg filed, in the Circuit Court for Montgomery County, a complaint for divorce and other relief against appellee, Susan Berg. Ms. Berg filed a counter-claim for divorce in which she also asked for alimony, child support, child custody, and a monetary award.

In the early part of June 2007, a merits trial was held to address numerous issues about which the parties disagreed. After an evidentiary hearing, the circuit court took the matter under advisement. The court, *inter alia*, later made a $450,000 monetary award in favor of Susan Berg, which was reduced to judgment. Mr. Berg thereafter made irregular payments on that judgment but, to date, the judgment has not been paid in full.

On August 7, 2012, Ms. Berg brought a garnishment action against Mr. Berg in which she sought to seize some of her ex-husband's personal property. With that filing, Ms. Berg

attached an interest worksheet setting forth the method she had used in applying payments made on the judgment.[2] According to her worksheet, Mr. Berg, as of September 27, 2012, had paid $371,562.51 toward the judgment but still owed $225,575.62. In that worksheet, she allocated all the payments received to principal and none to interest.

On March 27, 2014, Ms. Berg again brought a garnishment action - this time attempting to attach Mr. Berg's wages. She again attached an interest worksheet. That worksheet showed that she applied the payments first to interest and then to principal. The worksheet indicated that since September 27, 2012, Mr. Berg had made an additional payment of $10,000, but he still owed $248,746.65.

Mr. Berg objected to the method his ex-spouse used in applying payments on the March 27, 2014 worksheet. He contended that Ms. Berg should have applied his payments first to principal.

On October 1, 2014, the circuit court held an evidentiary hearing concerning Mr. Berg's objection to the garnishment worksheet. The purpose of the hearing was to determine the outstanding balance Mr. Berg owed on the judgment. At the hearing, exhibits were introduced and the court heard testimony from Ms. Berg. Thereafter, on December 17, 2014, the court entered a written order stating that all payments made on the judgment prior to August 7, 2012 should have been exclusively applied to the payment of principal and all

---

[2] Interest was calculated at 10% per year – the legal rate of interest owed on unpaid judgments.

-3-

payments made thereafter should be applied to the payment of accrued interest first and

principal second.

After Ms. Berg filed a timely motion to alter or amend judgment, which was denied,

she noted an in banc appeal. A hearing before a panel of three Montgomery County Circuit

Court judges was held on May 8, 2015. At the hearing, Mr. Berg argued, as he does here,

that the in banc panel had no jurisdiction to entertain the appeal because the issue the panel

was asked to consider did not "stem from a merits trial." The in banc panel ruled that it did

have jurisdiction to hear the appeal and entered an order providing that all payments made

on the $450,000 judgment should be credited "first to interest and then to principal." Mr.

Berg noted an appeal to this Court in which he does not claim that the in banc panel was

incorrect in its ruling concerning the allocation of payments. Instead, the sole issue he

presents is whether the in banc panel had jurisdiction to consider the issue it decided.

According to Mr. Berg, because the panel had no jurisdiction, the order entered by the in

banc panel should be stricken and the circuit court's order of December 17, 2014 reinstated.

## II.
## RULES OF INTERPRETATION

"When interpreting constitutional provisions, we generally employ the same rules of construction . . . of statutory language." *Davis v. Slater*, 383 Md. 599, 604, 861 A.2d 78 (2004) . . . . One of the cardinal rules of interpretation is that a court should not reach a meaning beyond the Constitution unless the relevant section is ambiguous. *Bernstein v. State*, 422 Md. 36, 43 (2011) . . . .

"Like construing a statute, to ascertain the meaning of a constitutional provision . . . we first look to the normal, plain meaning of the language." *Davis*, 383 Md. at 604, 861 A.2d 78 . . . . When that language is clear and

unambiguous, we need not review more than the words of the constitutional provision. *Id.* at 604-05, 861 A.2d 78 . . . . However, we note that our "goal . . . is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." . . .

*Remson v. Krausen*, 206 Md. App. 53, 61-62 (2012) (some citations omitted).

## III.
## HISTORY

Before discussing the precise contentions of the parties in this appeal, it is useful to review some history. One of the framers of the Constitution of 1867 was Richard H. Alvey, who subsequently became a judge and later Chief Judge of the Maryland Court of Appeals. Judge Alvey was one of the judges who later decided *Costigin v. Bond*, 65 Md. 122 (1886). In *Costigin*, the Court said:

> The Constitution, Art. 4, sec. 22, gave a new right of appeal. When a trial is conducted by less than the whole number of the [j]udges of a [c]ircuit [c]ourt, it is competent for a party against whom a decision is made to have the point or question reserved for the consideration of the three [j]udges *in banc*; and their decision is to be conclusive against him. This proceeding is in substitution of an appeal to the Court of Appeals, and makes a considerable alteration in the law on this subject. The change is not to be extended by construction beyond the terms of the Constitution.

*Id*. at 123-24. (Emphasis added.)

Up until 2006, the first several lines of Article IV, section 22 read:

> Where any Term is held, or trial conducted by less than the whole number of said [c]ircuit [j]udges, upon the decision, or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling or decision is made, upon motion, to have the point, or question reserved . . . .

-5-

(Emphasis added.)

In 2006, Article IV, section 22 was amended, *inter alia*, by deleting the phrase "Term is held, or." As mentioned earlier, section 22 now begins with the words "Where any trial is conducted by less than three Circuit Judges . . . ." What exactly the framers intended to convey when they used the words "[w]here any Term is held" is uncertain. But as shown by the debates held when another section of the Constitution was being discussed, there were, in 1867, seven judicial circuits that each had three judges.[3] Each year the circuit courts had one or more terms, meaning periods when the courts were in session. For instance, in some of the circuit courts, there would be two or more terms of court where jury trials were held and one or more terms when equity matters were considered. *See* Philip B. Perlman, *Debates of the Maryland Constitutional Conventions of 1867*, 334 (1923) (recounting discussion of an amendment to Article IV, section 20, which was defeated).

In *Bienkowski v. Brooks*, 386 Md. 516, 533 (2005), the Court explained why the framers gave litigants the right to an in banc appeal, viz.:

> The principal reason for Article IV, § 22, according to Judge Alvey, although in a case not directly involving § 22, was to create "a court *in banc*, where parties can have questions of law deliberately considered by at least three judges, without the delay and expense of an appeal to the Court of Appeals . . . ." *Roth v. House of Refuge*, 31 Md. 329, 333 (1869). This was the same reason which had been suggested to the 1867 Convention by Delegate Syester. Another reason appears to have been to reduce the

---

[3] Baltimore City constituted the Eighth Judicial Circuit and in 1867 had a different system, which included the Supreme Bench and several subsidiary courts. *See* Harry M. Sachs, Jr., 1 *Poe's Pleading and Practice*, § 21 (6th ed. 1970).

governmental expense associated with numerous appeals in the Court of Appeals. *See* John J. Connolly, *Maryland's Right of In Banc Review*, 51 Md. L.Rev. 434, 446-459 (1992). In addition, one scholar, who has made a comprehensive study of § 22's history, has suggested that the provision was a compromise between those convention delegates who believed that three judges should preside over circuit court trials and those delegates who favored a predominantly single-judge system. John J. Connolly, *Maryland's Right of In Banc Review*, *supra* at 435-459.[4]

Article IV, section 22 was amended in 1978 by substituting the words "District Court" for "Justices of the Peace."[5] In 2006, section 22 was amended once again. *See* Chapter 421 of the Acts of 2006. The amendment had its origin in House Bill 84, which was considered by the House Judiciary Committee on February 2, 2006. Material in the judiciary committee file indicates that the major purpose of the amendment was to overrule the decision in *Bienkowski v. Brooks*, *supra*. *See* written testimony by Melvin J. Sykes, Esquire, on behalf of the Court of Appeals Standing Committee of Rules of Practice and Procedure, submitted before the committee.

---

[4] The language of section 22, as originally written, began with the words: "Where any Term is held, or trial conducted by less than the whole number of said Circuit Judges, upon the decision, or determination of any point, or question, by the Court, it shall be competent to the party, against whom the ruling, or decision is made, upon motion, to have the point, or question reserved for the consideration of the three Judges of the Circuit, who shall constitute a Court *in banc* . . . ." Up until 1887, when, by statute, some circuits were granted more judges, this meant that the in banc panel would always include the judge whose ruling the appellant was seeking to overcome. For appellant's counsel, this must have been awkward, and probably accounts for the fact that in banc appeals were seldom filed. *See State Roads Commission v. Smith*, 224 Md. 537, 540 (1961) (in banc appeals have been "long authorized, but rarely used").

[5] Before the change, section 22 read, in material part: "The right of having questions reserved, shall not, however, apply to trials of Appeals from judgments of Justices of the Peace . . . .

After the Court of Special Appeals was formed, an appellee in the court in banc, if he or she was dissatisfied with the ruling by the in banc panel, routinely filed his or her appeal to this Court and not to the Court of Appeals. *See*, *e.g.*, *Board of License Commissioners for Montgomery County v. Haberlin*, 320 Md. 399, 405 (1990); *Estep v. Estep*, 285 Md. 416, 420-21 n.4 (1979). But the *Bienkowski* Court held that an appellee in the in banc court, who wished to challenge a decision of the in banc panel, could only have appellate review <u>if</u> that party filed a petition for a *writ of certiorari* to the Court of Appeals that was granted. 386 Md. at 549.

A secondary purpose of the amendment was to clean up some "archaic" language in section 22, e.g., deleting the provision in section 22 that allowed an appeal from a "writ of error."[6] *See* written testimony of Melvin J. Sykes, *supra*, to the House Judiciary Committee. In the legislative history, there is no specific discussion as to why the words "Term is held, or" were deleted. Nevertheless, the purpose of House Bill 84 was stated to be:

> FOR the purpose of proposing an amendment to the Maryland Constitution relating to the establishment of the right of a party who did not seek review by a circuit court in banc to the Court of Special Appeals from an adverse decision by the circuit court in banc; altering the composition of a panel of judges for an in banc review; repealing the authority of the circuit courts to regulate by rules the procedure for appeals to the circuit court in banc; providing that the procedure for appeals to the circuit court in banc be provided by the Maryland Rules; providing that a decision by the circuit court in banc does not preclude the right of appeal to the Court of Special Appeals by an adverse party who did not seek in banc review; repealing an obsolete

---

[6] The writ of error has been abolished in Maryland.

provision regarding "writs of error"; and submitting this amendment to the qualified voters of the State of Maryland for their adoption or rejection.

In his opening brief, Mr. Berg contended that the words "[T]erm is held, or" were deleted, with the intent of narrowing the scope of what could be considered by an in banc panel. According to appellant's brief, before the deletion of these words in 2006, the scope of review by an in banc panel was much broader than it is now and would have encompassed review of "proceedings of the kind challenged below by Ms. Berg." But at oral argument, appellant's counsel abandoned that argument and admitted that the deletion of the words "Term is held, or" was not intended to narrow the scope of review and, in fact, did not constitute a substantive change. That concession is well-founded. The legislative history of House Bill 84 strongly suggests that the words at issue were considered to be archaic and for that reason were deleted with no substantive change intended. *See Remson*, 206 Md. App. at 64 (characterizing the 2006 changes in section 22, as non-substantive). It is inconceivable that the General Assembly would have intended to make such an important change in the right to file an in banc appeal without making any reference to such an intent in the "purpose clause" or elsewhere in the bill's legislative history.

## IV.
## ANALYSIS

### A. Post Trial Motions

Mr. Berg argues that one cannot file an in banc appeal from rulings on a post-trial motion. Mr. Berg reads the language where "any trial is conducted" to mean that in banc

appeals must concern errors that were made by the judge at the "merits trial." Mr. Berg cites

no authority to support that argument nor can we find support by analyzing the words used

in the Constitution. Section 22 allows an appeal "upon the decision or determination" of any

point or question decided by less than three circuit court judges. It contains no time

restrictions or other language that would evidence an intent to disallow review by an in banc

panel of post trial "decision[s] or determination[s]" that are decided by a single judge.

Since 1867, there have only been about two dozen reported cases that concern appeals

to the Maryland appellate courts from decisions of an in banc panel.[7] On several occasions,

the matter under review concerned issues considered by the in banc panel that dealt with the

propriety, *vel non*, of post-trial actions by trial judges. In other words, the decisions being

reviewed did not concern an allegation that the judge made any error at trial. *See*, *e.g.*,

*Bienkowski*, 386 Md. at 555 (after an in banc decision, the Court of Appeals considered, and

decided, whether the judge who presided at a tort trial erred in denying a motion for new trial

based on the alleged inadequacy of the verdict); *Langston v. Langston*, 366 Md. 490, 494

(2001) (issue considered by the in banc panel was whether the trial judge, when considering

a post-trial motion to reduce alimony, erred in reducing alimony retroactive to a date prior

to when the request for reduction was filed); *Dabrowski v. Dondalski*, 320 Md. 392, 395

(1990) (*per curiam*) (decision concerned whether the judge's denial, *inter alia*, of a motion

---

[7] In *Washabaugh*, 285 Md. at 397 n.2, the Court lists the first eleven cases that concerned in banc appeals. Not counting *Washabaugh*, there have since been about twelve additional cases of that sort, the latest of which was *Remson*, 206 Md. App. 53.

for a new trial was a final appealable order); *Bethesda Title & Escrow, LLC v. Gochnour*, 197 Md. App. 450, 451 (2011) (appellant's unsuccessful effort, before an in banc panel, to reverse a circuit court's denial of a motion to vacate default judgment, barred a subsequent appeal to the Court of Special Appeals). In the cases just cited, the issues decided by the in banc panel, and later by an appellate court, did not "stem from a merits trial." Instead, the issues resolved stemmed from either pre-trial or post-trial decisions by the circuit court judge who initially decided the matter.

In support of her argument, Ms. Berg relies primarily on *Langston*, *supra*, which she claims has an almost identical "procedural posture" as the case at hand, i.e., "an appeal from a judge's final ruling from a post-trial hearing in a family law case." Ms. Berg also relies on *Dean v. State*, 302 Md. 493, 497 (1985), where the Court said that there is "no different standard" of appealability to a court in banc than from an appeal to the Court of Special Appeals. Ms. Berg also places reliance on language found in *Board v. Haberlin*, 320 Md. at 406, where the Court said: "The purpose of . . . [Art. IV, section 22] was to provide a substitute or alternate for an appeal to the Court of Appeals or, in recent years, to the Court of Special Appeals." The *Haberlin* Court also said:

> In a majority of circuit court cases, an appeal from a final judgment to the Court of Special Appeals is authorized by § 12-301 of the Courts and Judicial Proceedings Article, and there are no other statutory provisions limiting or modifying the right of appeal under § 12-301. As to these ordinary cases, Art. IV, § 22, of the Constitution and Rule 2-551 provide an alternate avenue of appeal to a court in banc.

The General Assembly, however, will often enact statutes providing for a limited or extraordinary appeal in special cases. For example, while appeals in circuit court criminal cases are taken in the usual manner and go to the Court of Special Appeals, an appeal in a case where the death sentence has been imposed is automatic and goes to the Court of Appeals. Code (1957, 1987 Repl Vol.), Art. 27, § 414; Rule 8-306.

*Id*. at 407 (emphasis added).

The in banc panel in this case agreed with Ms. Berg and held that within the meaning of *Haberlin*, this was an "ordinary case," and therefore, because she could have taken an appeal (from the circuit court's final decision regarding the application of interest) to this Court, she therefore had the option of taking an appeal to an in banc panel.

In his reply brief, Mr. Berg argues that the cases cited by Ms. Berg, although they discuss decisions from an in banc panel dealing with post trial decisions of the circuit court, are not binding because none of the cases discussed the jurisdictional issues he now raises. He words that argument as follows:

> In essence, what Ms. Berg contends is that because people have been making the same legal error for a great many years that error has somehow effectively become the law of the land through a variety of adverse constitutional possession [sic]. Yet this is not how the law operates where the underlying mandate is one of a constitutional - and not common law - variety. There is a method through which the Maryland Constitution may be amended, and the presentation of a string citation to misguided case law is not a part of that method. *See, e.g.*, MD Constitution, Art. 14 (setting forth the mechanisms through which the Maryland Constitution may be amended).

(Emphasis added, footnote omitted.)

Although the issue is not outcome-determinative in this case, it is plain to us that the cases cited by Ms. Berg (in which litigants filed in banc appeals objecting to decisions

relating to rulings concerning post trial motions) were not wrongly decided, at least as far as in banc jurisdiction was concerned. Because section 22 allows in banc appeals from any "decision or determination" where a trial has been conducted by less than three judges,[8] in banc appeals from post trial decisions or determinations by less than three judges are allowed.

### B. The Meaning of the Word "Trial" as Used in Article IV, Section 22

What we have said in Part IV-A is *dicta* because, even if we were to assume, *arguendo*, that Mr. Berg is correct when he argues that an in banc appeal is not allowed from a decision or determination made concerning a post trial motion, Mr. Berg would not benefit. We say this because the issue here present <u>was</u> decided based on what occurred at a trial.

As mentioned earlier, when construing language used in a Constitution, we first look "to the normal, plain meaning" of the language. *Remson*, 206 Md. App. at 61, quoting *Davis v. State*, 383 Md. 599, 604 (2004).

*Black's Law Dictionary* (9th ed. 2009) defines a "trial" as "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding." Blackstone gave a similar, but more succinct definition: "the examination of the matter of fact[.]" *See* 3 William Blackstone, *Commentaries on the Laws of England* 330 (1825). *See also Miller v. Tobin*, 18 F. 609, 616 (D. Or., 1883) ("'Trial' is a common-law term, and is

---

[8] Maryland Rule 2-551(a) states that "a party may have a judgment or determination of any point or question reviewed by a court in banc," when such a review "is permitted by the Maryland Constitution[.]"

commonly used to denote that step in an action by which issues or questions of fact are decided.").

In 42A *Words and Phrases* 107-146 (Thomson Reuters/West 2008), several hundred cases are summarized. In those cases, courts have considered the meaning of the word "trial" as used in various documents, including the U.S. Constitution, state constitutions and various statutes, rules of procedure and contracts. Many of those cases utilized the common law definition of "trial" that in substance, is the same as in *Black's* and *Miller*, both *supra*. This too is the normal, plain meaning of the word "trial."

In *Smith v. State*, 115 Md. App. 614, 619-20 (1997), we were called upon to decide whether a probation revocation hearing is a separate trial within the meaning of the Maryland Post Conviction Act, which was then codified in Article 27, § 645(a)(2)(i) of the Md. Code (1957, 1996 Repl. Vol). Art. 27, § 645A(a)(2)(i) provided: "A person may file only one petition arising out of each trial, for relief under this [post conviction statute]." After an extensive review of the legislative history of the Post Conviction Act, we held that a probation revocation hearing is a "trial" within the meaning of the Act. *Id*. at 625.

Under Mr. Berg's interpretation of Art. IV, section 22, "trial" means a "merits trial" that results in a final appealable judgment; any subsequent proceeding, according to

appellant, is not a trial even when, as here, a court makes a decision based on evidence presented in open court.[9]

In the case *sub judice*, we know that the framers intended in banc appeals to be a vehicle by which litigants could save money, which accounts for the nickname "the poor person's appeal." *See Remson*, 206 Md. App. at 60 (quoting *Washabaugh*, 285 Md. at 396, and citing *Roth v. The House of Refuge*, 31 Md. at 333 (1869)). As any litigator knows, many important issues are resolved by post trial motions at which the court decides facts based on evidence. That is what happened here and it is what happened in *Smith*, *supra*, where a probation revocation hearing was deemed to be a trial.

Because the reduction of litigation expenses was one of the primary goals of section 22, we can think of no reason why the framers could possibly have intended to give the word "trial" a meaning so narrow as to restrict in banc appeals in the manner espoused by Mr. Berg. Moreover, we can think of no persuasive reason why the framers would have intended that the word "trial" would not be given its common law meaning.[10] Therefore, we interpret

---

[9] Under the Maryland Rules of Procedure, a trial need not dispose of all issues in a case. The Rules allows a court to order a separate trial "of any separate issue[.]" *See* Rule 2-503(b).

[10] Judge Alvey introduced section 22 at the 1867 Constitutional Convention. He was one of the judges who decided *Costigin*, *supra*. The *Costigin* Court certainly did not give the word "trial" a narrow meaning when it stated, less than twenty years after section 22 was adopted, that in banc appeals were intended as a substitution of the right to file an appeal to the Court of Appeals. 65 Md. at 124. Certainly Judge Alvey and his judicial colleagues would have known that so long as a final judgment had been entered, an appeal to the Court of Appeals was allowed from judgments entered long after the merits trial was held.

the word "trial" as used in section 22 as meaning "that step in an action by which issues or questions of fact are decided." *Miller*, 18 F. at 616. Applying that definition, a trial was held on October 1, 2014 by the circuit court when it was called upon to decide, based on evidence introduced, how Mr. Berg's payments on the monetary award should be applied. Thus the in banc court did have jurisdiction to decide the issue presented to it by Ms. Berg.

Mr. Berg asserts that if we adopt the meaning of "trial" discussed above, then various provisions of the Maryland Declaration of Rights "would be utterly without limitation or meaning." In this regard, he directs our attention to Article 5(a) and Article 23 of the Declaration of Rights, which, insofar as here pertinent, grant inhabitants of Maryland "[t]he right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of $15,000[.]" There is no merit in this argument. Our decision concerns what constitutes a trial: it has nothing to do with whether a litigant is entitled to a jury trial. Such entitlement depends on whether 1) the issue arises out of a civil proceeding at law; 2) whether the amount in controversy exceeds the sum of $15,000; and 3) whether a timely request for a jury trial is made.[11]

---

[11] Mr. Berg also claims that if we give the word "trial" its common law meaning, then he would have had a right to a jury trial concerning the issue of how interest should be allocated. He provides no explanation as to why this is true - which it plainly is not because the issue did not arise in an action at law. *See* Declaration of Rights Article 5(a) and Article 23. In Maryland, the right to a jury trial exists only in cases that under common law could be tried by a court of law as opposed to a court of equity.

## V.
## OTHER CONTENTIONS

As mentioned earlier, Ms. Berg cites cases that state that under ordinary circumstances, an in banc court has jurisdiction to hear any matter that could be heard by this Court. If this is literally true, this would mean that an in banc court could hear cases where no trial was even conducted.

Mr. Berg contends that when construing section 22, we cannot treat that section as if the words "[w]here any trial is conducted" did not exist. This is an interesting point, but one that we shall not address because the resolution of that issue would not affect the outcome of this case. Nevertheless, we can imagine that such an issue could arise in the future when, for instance, an in banc panel is asked to decide whether a motion for summary judgment should have been granted, or whether a circuit court judge erred in granting a motion to dismiss a complaint for failure to state a cause of action upon which relief can be granted. Members of the bar should be aware that such an issue lurks.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**